# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued October 19, 2016      Decided December 20, 2016

No. 15-5330

SEARS, ROEBUCK & CO., ET AL.,
APPELLANTS

v.

UNITED STATES POSTAL SERVICE,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-01031)

---

*David M. Levy* argued the cause for appellants. With him on the briefs were *John F. Cooney*, *Moxila A. Upadhyaya*, and *Katie M. Wright*.

*Peter C. Pfaffenroth*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *R. Craig Lawrence*, Assistant U.S. Attorney, *Stephan J. Boardman*, Chief Counsel, U.S. Postal Service, and *Alice L.A. Covington*, Appellate Counsel.

Before: SRINIVASAN and PILLARD, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: This case arises from Appellants'—Sears, Roebuck and Co. ("Sears"), Segerdahl Graphics, Inc. ("Segerdahl"), and Aspen Marketing Services, LLC ("Aspen")—use of the United States Postal Service ("Postal Service") for delivery of bulk mailings. In 2009, Appellants mailed over 8.2 million folded self-mailers, *i.e.*, mail that can be folded and sent without envelopes, for which they paid postage at a discounted automation rate. To qualify for the discounted rate, Appellants certified that their mailings met the applicable sealing requirements for oblong self-mailers. These requirements stated, in relevant part: "If the piece is 7 inches long or more, the piece must be sealed on the top and the bottom." Domestic Mail Manual ("Manual") § 201.3.14.1c (May 11, 2009).

Following an investigation, the Postal Service determined that Appellants were ineligible for the discounted rate because their mailers, which exceeded seven inches in length, had been sealed only on the left edges, and not on the top and bottom edges. The Postal Service assessed revenue deficiencies against Appellants for over $1.25 million. The assessments were upheld by the Postal Service's Pricing and Classification Service Center ("PCSC").

Appellants sued the Postal Service in the District Court to overturn the decisions of the PCSC. Appellants argued that the Manual did not specify where along the top and bottom edges the seals must be placed, and that their seals along the left edge were close enough to the top and bottom to effectively seal those edges in compliance with the Manual requirements. Appellants thus claimed that the Postal Service's interpretation of the Manual, and the PCSC's decisions upholding that interpretation,

should be set aside as unreasonable. In their appeal to this court, Appellants additionally contend that, in the arguments presented to the District Court, counsel for the Postal Service offered a new interpretation of the Manual that could not be squared with the PCSC's decisions. According to Appellants, the District Court's reliance on this new interpretation violated the commands of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943).

We can find no inconsistency in the Postal Service's interpretation of the Manual. The PCSC's decisions clearly held that, under the applicable 2009 sealing requirements, seven-inch or longer oblong self-mailers had to be sealed somewhere "on" the top and bottom edges. The PCSC also found that seals on the left edge that approached the top and bottom were not "on" the top and bottom. The Postal Service's arguments to the District Court were not at odds with the PCSC's decisions. We also find that the Postal Service's interpretation of the sealing requirements is perfectly consistent with the terms of the Manual and entirely reasonable.

For the reasons explained below, we deny Appellants' challenges to the PCSC's decisions and affirm the judgment of the District Court enforcing the revenue deficiencies against Appellants. However, because the Government has confessed error with respect to surcharges on the revenue deficiencies, we reverse and vacate the District Court's award of surcharges against Appellants.

## I.  BACKGROUND

The eligibility requirements for automated rates are codified in the Manual and incorporated by reference in the Code of Federal Regulations. *See* 39 C.F.R. § 111.1. Appellants do not challenge the Postal Service's authority to promulgate the sealing requirements at issue in this case. *See* 39 U.S.C. §

401(2). These requirements have been changed since 2009, but the parties agree that the May 11, 2009 version of the Manual governs the resolution of this case.

In 2009, the Manual requirements for sealing on the open edges of folded self-mailers depended upon a mailer's size, weight, number of pages, and place of folding. Manual § 201.3.14.1. With respect to mailers folded on the right edge, the Manual stated:

> The left edge (trailing edge) and other open edges must be secured with at least one tab or a glue line. The number of tabs required is determined by the final trim size and paper basis weight of the piece. If the piece is 7 inches long or more, the piece must be sealed on the top and the bottom.

Manual § 201.3.14.1c.

The Postal Service also published a Quick Service Guide ("Guide") that included illustrations showing examples of the correct use of tabs, seals, and glue strips or spots on folded self-mailers. Guide § 201b at 2. One illustration depicted a folded self-mailer folded on the right edge with the trailing (left), top, and bottom edges open.



*Id.* The illustration made it clear that separate sealants must be placed on the trailing, top, and bottom edges. *Id.* Although the illustration showed "tabs" as the method of sealing, the Guide made it plain that, "[a]s an alternative to tabs or wafer seals, the open edge of the length of the mailpiece may be continuously glued or spot glued." *Id.* at 1.

In April 2009, an agent for Sears mailed out approximately 5.8 million folded self-mailers ("Sears Mailers"). In August 2009, Sears hired Segerdahl to mail out approximately half a million folded self-mailers ("Segerdahl Mailers"). In December 2009, Aspen mailed out approximately 1.9 million folded self-mailers ("Aspen Mailers"). There is no dispute that all three mailers were subject to the sealant requirements of Manual § 201.3.14.1c.

The Sears and Segerdahl Mailers were sealed by "a pair of elongated glue dots" parallel to the trailing edge, each elongated glue dot reaching to within one-half of an inch to one inch from the top or bottom edge. Joint Appendix ("JA") 211; *see also* JA 24, 211–12. The Aspen Mailers were similarly sealed with "two long glue lines placed at the end of the trailing edge," JA 394, and extended "close to the top and bottom edges," *id.*, or were "flush" with the top and bottom edges, Br. for Appellants at 11. Aspen, Segerdahl, and Sears (through its agent) certified that their mailers complied with the automated standards and paid the discounted automated rates. *See* Manual § 607.1.1.

The Postal Service assessed revenue deficiencies against each Appellant for their respective mailers. The deficiency letter to Sears stated that its mailers were "not prepared in accordance with automation design standards but receiv[ed] automation rates" and assessed a revenue deficiency of $1,033,597.19. JA 22. An Investigative Memorandum accompanying the deficiency letter stated the trailing edges were sealed, but

"[t]here were no additional tabs or glue spots on any of the other open sides," JA 24, even though the Postal Service required "that all open sides needed to be sealed with tabs or glue spots, consistent with the illustration contained within the Quick Service Guide, section 201b," JA 25. The Postal Service also assessed a deficiency of $94,978.27 against Sears for the Segerdahl mailings and a deficiency of $125,367.01 against Aspen for its mailers. Each letter stated that the mailers "lacked appropriate seals (tabbing or glue spot) at the open edges (top and bottom), as required." JA 141, 172. Appellants then appealed to the PCSC to seek review of the deficiency assessments.

The PCSC confirmed that the Sears Mailers were "secured by means of two one inch glue lines on the trailing edge one within one inch of the top edge and the other within one inch of the bottom edge." JA 2. The PCSC made it clear, however, that this arrangement did not satisfy the applicable sealing requirements. *Id.* The PCSC noted in passing that the Investigative Memorandum filed by the Postal Inspector stated that "the top and bottom edges required a tab at the center of each edge," *id.*, but this was not the basis for PCSC's decision. Rather, in rejecting Sears' claim that the trailing edge glue served to seal the top and bottom, the PCSC stated that the

> *left edge (trailing edge) and other open edges must be secured* with at least one tab or a glue line. The number of tabs required is determined by the final trim size and paper basis weight of the piece. If the piece is 7 inches long or more, the piece must be sealed on the top and the bottom . . . . [T]he placement of the glue lines near the trailing edge did not serve to secure the top and bottom open edges.

*Id.*

As to the Segerdahl Mailers, the PCSC likewise found that the "placement of the glue lines near the trailing edge did not serve to secure the top and bottom open edges." JA 126. As to the Aspen Mailers, the PCSC rejected the challenge to the deficiency assessment on the ground that "the top and bottom edges were not sealed. . . . The standards clearly state that the top, bottom, and trailing edges must be sealed." JA 166.

On June 18, 2014, Appellants filed suit in District Court against the Postal Service to set aside the revenue deficiencies. Appellants alleged the Postal Service's decisions violated the Manual because, "[w]hile the fourth sentence of former [Manual] § 201.3.14.1.c required that pieces '7 inches long or more' be sealed 'on the top and the bottom,' the rule did not specify *where* along the top and bottom edges the seals must be placed." JA 226–27. The Postal Service cross-claimed for enforcement of the revenue deficiencies. Appellants and the Postal Service then filed cross-motions for summary judgment.

The District Court upheld the PCSC's decisions and entered judgment on the Postal Service's counterclaim under the Federal Debt Collection Procedure Act, 28 U.S.C. §§ 3001 *et seq.*, and the Federal Debt Collection Improvement Act, 31 U.S.C. §§ 3701 *et seq.*, in the amount of the revenue deficiencies assessed, plus a ten percent statutory surcharge. *Sears, Roebuck & Co. v. USPS*, 134 F. Supp. 3d 365 (D.D.C. 2015). The court found that the PCSC's interpretation of the Manual was supported by the language and purpose of the regulation, and that the Postal Service had engaged in reasoned decision-making in issuing the deficiency assessments. The District Court additionally noted that Appellants' "problem was not an off-center tab or glue spot; the problem was that there was essentially *no* seal on the top and the bottom." *Id.* at 377. On November 20, 2015, Appellants filed a timely appeal with this court.

On September 22, 2016, the Postal Service submitted a letter to the court confessing error as to the ten percent surcharges. The letter stated, *inter alia*, that,

> upon further consideration, the government has determined that it is not in fact entitled to a surcharge under 28 U.S.C. § 3011(a) where, as here, it has not sought the pre- or post-judgment remedies referenced in § 3011(a). The government therefore will not collect the surcharge that the District Court awarded in this case, and it does not oppose vacatur of the part of the District Court's judgment that awarded the surcharge.

Confession of Error Letter at 2 (Sept. 22, 2016), ECF No. 1637245.

## II.  ANALYSIS

### A.  Standard of Review

"Apart from two very limited exceptions" that are irrelevant here, the judicial review provisions of the Administrative Procedure Act ("APA") are "not applicable 'to the exercise of the powers of the Postal Service.'" *Carlin v. McKean*, 823 F.2d 620, 622 (D.C. Cir. 1987) (quoting 39 U.S.C. § 410(a)); *see also N. Air Cargo v. USPS*, 674 F.3d 852, 858 (D.C. Cir. 2012). Nevertheless, under the law of this circuit, Postal Service decisions are still subject to non-APA judicial review in some circumstances. *See, e.g.*, *Nat'l Ass'n of Postal Supervisors v. USPS*, 602 F.2d 420, 432 (D.C. Cir. 1979) ("That the Postal Service has broad discretion . . . does not mean . . . that its decisions are entirely insulated from judicial surveillance"). The scope of non-APA review is narrow, however. *See, e.g.*, *Aid Ass'n for Lutherans v. USPS*, 321 F.3d 1166, 1173 (D.C. Cir. 2003) ("[J]udicial review is available when an agency acts *ultra*

*vires*"); *see also Mittleman v. Postal Regulatory Comm'n*, 757 F.3d 300, 307 (D.C. Cir. 2014) (construing *Aid Ass'n for Lutherans* to apply to an analogous provision exempting the Postal Regulatory Commission from APA review; holding that judicial review "is available only to determine whether the agency has acted 'ultra vires'—that is, whether it has 'exceeded its statutory authority'").

In prior cases, we have construed the scope of non-APA review to include: (1) "a straightforward question of statutory interpretation," *Nat'l Ass'n of Postal Supervisors*, 602 F.2d at 432; *see also N. Air Cargo*, 674 F.3d at 858–59; (2) a question concerning whether a regulation in the Manual was a valid exercise of the Postal Service's authority, *Nat'l Retired Teachers Ass'n v. USPS*, 593 F.2d 1360, 1363 (D.C. Cir. 1979); *see also Aid Ass'n for Lutherans*, 321 F.3d at 1175; and (3) a question focusing on whether a Postal Service decision was supported by the agency's contemporaneous justification or, instead, reflected counsel's *post hoc* rationalization, *N. Air Cargo*, 674 F.3d at 859–60 (applying *Chenery*, 318 U.S. 80).

The Postal Service acknowledges that the applicable standard of review in this case is "whether the agency has engaged in 'reasoned decision-making.'" Br. for Appellee at 18 (citing *Greater Bos. Television Corp. v. FCC*, 444 F.2d 841, 851 (D.C. Cir. 1970); *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.* ("*State Farm*"), 463 U.S. 29, 43 (1983)). Although the Postal Service argues that "[t]his standard of review is 'extremely limited' and less intrusive than APA review," *id.*, the "reasoned decision-making" standard it cites is the paradigm of APA review, *see* EDWARDS, ELLIOTT, & LEVY, FEDERAL STANDARDS OF REVIEW 203–10 (2d ed. 2013) (discussing the requirement of "reasoned decisionmaking" under *State Farm*).

Arguably, there is a question as to whether reasoned decision-making review can be squared with the seemingly more limited scope of review outlined in the court's decisions in *Aid Ass'n for Lutherans* and *Mittleman*. We need not tarry over this question, however, because "[t]he judicial review provisions of the APA are not jurisdictional, so a defense based on exemption from the APA can be waived by the Government." *Air Courier Conf. v. Am. Postal Workers Union*, 498 U.S. 517, 523 n.3 (1991) (citation omitted). Because the Postal Service agrees that the reasoned decision-making standard of review applies, Br. for Appellee at 17–22, we will assume the same.

**B. The Agency's Interpretation of the Sealing Requirement Has Not Changed over the Course of These Proceedings.**

Under *Chenery*, "an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." 318 U.S. at 95. "[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained," so that the reviewing court can be assured the agency "has exercised the discretion with which Congress has empowered it." *Id.* at 94–95.

Appellants contend that the District Court's decision flouts the commands of *Chenery*. In particular, Appellants argue:

> In the briefs of the Postal Service, the construction of former [Manual] § 201.3.14.1c underwent several radical changes. The briefs repudiated the legal theory actually adopted by the PCSC—that former [Manual] § 201.3.14.1c required the top and bottom edges to be sealed "at the center of each" edge. Appellate counsel advanced instead a succession of alternative

interpretations of the rule—several of which the same counsel in turn abandoned.

Br. for Appellants at 21. We reject this argument because it misconstrues the record.

As noted above, the PCSC's decisions noted in passing that the Postal Inspector's Investigative Memoranda stated that "the top and bottom edges required a tab at the center of each edge." JA 2, 126. This, however, was not the basis for the PCSC's decisions. Rather, the PCSC made it clear that, under the applicable sealing requirements, the *"left edge (trailing edge) and other open edges must be secured* with at least one tab or a glue line," and that "the piece must be sealed on the top and the bottom." *Id.* The PCSC did not say that center placement of the glue or tabs was part of the requirement. Rather, it merely said that "the placement of the glue lines near the trailing edge did not serve to secure the top and bottom open edges." *Id.*

Before the District Court, counsel for the Postal Service reasonably referenced the final decisions of the PCSC to "make clear that the core problem with plaintiffs' self-mailers was that there was *no* seal on the top or bottom at all, not that it was off-center." JA 322 n.6. This representation was not at odds with the PCSC's decisions, nor did it reflect a *post hoc* rationalization of the agency's interpretation of the Manual. *See, e.g.*, *Chiquita Brands Int'l Inc. v. SEC*, 805 F.3d 289, 299 (D.C. Cir. 2015) ("*Chenery* does not bar an agency's counsel from merely elaborating on the consistent stance the agency articulated below").

Appellants seem to suggest that the agency was bound to the statement in the Investigative Memoranda suggesting that a center placement of the glue or tabs was part of the sealing requirement. This is simply wrong. The Investigative

Memoranda were prepared by the Postal Inspector, whose authority is to "investigate all allegations of violations of postal laws or misconduct by all . . . persons [other than postal employees]." 39 C.F.R. § 233.1(b)(1)(ii). The Postal Inspector does not serve an adjudicative function. It is the local Post Office that assesses the initial revenue deficiency. Any dispute over an assessment must be appealed to the PCSC, which in turn "issues the final agency decision." Manual § 607.2.1; *see also id.* § 607.2.5.

The separation of investigatory and adjudicatory functions is a familiar feature in some administrative agencies. For example, in the Department of Labor, the Occupational Safety and Health Act of 1970 ("OSH") "charges the Secretary [of Labor] with responsibility for setting and enforcing workplace health and safety standards. . . . If the Secretary (or the Secretary's designate) determines upon investigation that an employer is failing to comply with such a standard, the Secretary is authorized to issue a citation and to assess the employer a monetary penalty." *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 147 (1991). However, the "Commission is assigned to 'carr[y] out adjudicatory functions' under the Act." *Id.* (citation omitted); *see also RAG Cumberland Res. LP v. Fed. Mine Safety & Health Review Comm'n*, 272 F.3d 590, 592, 595 (D.C. Cir. 2001) (explaining division of authority in the Mine Act between inspecting and issuing citations for violations of the Mine Act, which is the purview of the Secretary of Labor, and adjudicating disputes under the Mine Act, "including challenges by mine operators to citations and orders issued by the Secretary of Labor," which is the purview of the Federal Mine Safety and Health Review Commission).

Here, the Postal Inspector's purview is even more limited than the Secretary of Labor under OSH or the Mine Act, for the

Postal Inspector does not establish regulatory standards. And the Postal Inspector certainly does not issue decisions that constitute final agency actions. The Postal Inspector's Investigative Memoranda in this case did not even recommend sanctions. Instead, the Memoranda merely stated that the Postal Inspector "initiated an investigation of a potential revenue deficiency," JA 24, and concluded "a revenue loss . . . is attributed to this mailing," JA 26. *See also* JA 174, 176. The initial determinations regarding assessments for revenue deficiencies were made by local post offices, and the PCSC issued the final agency decisions approving the assessments.

What matters here is what the PCSC said in justifying the assessments against Appellants. As we have explained, the PCSC did not interpret the Manual to require a center placement of the glue or tabs. What the PCSC found, and the District Court confirmed, was that Appellants' "problem was not an off-center tab or glue spot; the problem was that there was essentially *no* seal on the top and the bottom." *Sears, Roebuck & Co.*, 134 F. Supp. 3d at 377. This has been the consistent position of the Postal Service during the entire course of these proceedings. Therefore, we reject Appellants' argument that the District Court's decision defies *Chenery*.

## C. The Postal Service's Interpretation of the Sealing Requirements Was Reasonable.

Under the applicable standard of review, we are constrained to defer to the agency's interpretation of the Manual if it "sensibly conforms to the purpose and wording of the regulations." *Fabi Constr. Co. v. Sec'y of Labor*, 370 F.3d 29, 36 (D.C. Cir. 2004) (quoting *Montgomery KONE, Inc. v. Sec'y of Labor*, 234 F.3d 720, 722 (D.C. Cir. 2000)). In their brief to this court, Appellants proffer alternative interpretations of the

sealing requirements in an effort to undercut the PCSC's decisions. Their arguments cannot carry the day.

The PCSC's decisions upholding the Postal Service's interpretation of the Manual's sealing requirements easily survive review pursuant to the reasoned decision-making standard. The PCSC held that a self-mailer longer than seven inches must have one tab (or glue line) on the left edge, one on the top, and one on the bottom. This holding conforms precisely to the plain language of the Manual. Likewise, the PCSC's holding that the two glue lines on the left edge of Appellants' mailers were not "on" the top or bottom merely because they were "near" the top and bottom edges is a perfectly reasonable construction of the Manual. Indeed, the illustration in the Postal Service's Quick Guide – with three separate tabs sealing the left, top, and bottom edges – gave Appellants clear notice of the sealing requirements.

Appellants contend that it was not necessary for the Postal Service to require three tabs or glue lines to prevent hollow, circular mail pieces that might jam mail sorting equipment. This is not the point, however. There is no doubt that the sealing requirements as interpreted by the Postal Service effectively served to limit jams in mail sorting equipment. It does not matter that different requirements might have served the same purpose. What matters here is that the sealing requirements were reasonable and Appellants had clear notice of what was necessary in order to qualify for the discounted automation rate. Therefore, pursuant to the reasoned decision-making standard, we will not second-guess the Postal Service's reasonable judgments regarding Manual requirements. *See, e.g.*, *USPS v. Postal Regulatory Comm'n*, 785 F.3d 740, 750 (D.C. Cir. 2015) ("[W]e review the [Postal Regulatory] Commission's interpretation of its own regulations with substantial deference, allowing that interpretation to control unless plainly erroneous

or inconsistent with the regulation" (citation and internal quotation marks omitted)); *Orengo Caraballo v. Reich*, 11 F.3d 186, 193 (D.C. Cir. 1993) ("While we require the [Department of Labor] to offer a reasoned analysis . . ., we do not sit in review to substitute our judgment for that of the agency").

Finally, Appellants contend that sealing requirements adopted after 2009 would not pass muster under the Postal Service's construction of the 2009 requirements. This claim is self-evidently irrelevant because, as we have found, the 2009 requirements were reasonable and we have no occasion here to assess requirements adopted after 2009.

## III. CONCLUSION

We hereby deny Appellants' challenges to the PCSC's decisions and affirm the judgment of the District Court enforcing the revenue deficiencies against Appellants. We reverse and vacate the District Court's award of surcharges against Appellants.

*So ordered*.