**BUFFALO CRUSHED STONE, INC., Petitioner,**

v.

**SURFACE TRANSPORTATION BOARD and United States of America, Respondents.**

**R.J. Corman Railroad Company/Allentown Lines, Inc. and Consolidated Rail Corporation, Intervenors.**

**No. 98–1505.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 13, 1999.

Decided Oct. 29, 1999.

William A. Mullins argued the cause for petitioner. With him on the briefs was David C. Reeves.

Theodore K. Kalick, Attorney, Surface Transportation Board, argued the cause for respondents. With him on the brief were Henri F. Rush, General Counsel, Ellen D. Hanson, Deputy General Counsel,

Joel I. Klein, Assistant Attorney General, U.S. Department of Justice, John J. Powers, III and Robert J. Wiggers, Attorneys.

Jonathan M. Broder, Kevin M. Sheys, and Paul M. Laurenza were on the brief for intervenors.

Before: GINSBURG, HENDERSON and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

A Surface Transportation Board regulation provides that rail abandonment notices containing false information are "void *ab initio*" and must be "summarily reject[ed]." In this case, although a false statement in a notice of abandonment was not brought to the Board's attention until long after the notice was filed and the line sold to another carrier, petitioner argues that the regulation requires the Board to reject the notice and nullify the sale. Agreeing with the Board that the regulation does not unambiguously require that result and finding the Board's action neither arbitrary nor capricious, we deny the petition for review.

### I.

Rail carriers seeking to abandon rail lines must first receive authorization from the Surface Transportation Board. Pursuant to 49 U.S.C. § 10903(d), the Board may affirmatively approve an abandonment upon finding that it is permitted by "public convenience and necessity." Alternatively, the Board may expedite the process by granting the carrier either an "individual" or "class" exemption from section 10903(d). *See* 49 U.S.C. § 10502. To initiate the expedited class exemption procedure—the process involved in this case—a carrier files with the Board a "notice of exemption," which must certify that no local traffic has moved over the line for at least two years. *See* 49 C.F.R. § 1152.50(b). If a notice of exemption con-

tains false or misleading information, section 1152.50(d)(3) of the Board's regulations provides—in language central to this dispute—that "the use of the exemption is void *ab initio* and the Board shall summarily reject the exemption notice." 49 C.F.R. § 1152.50(d)(3).

The Board alerts the public to a proposed "class exemption" abandonment by publishing a notice in the Federal Register. *See id.* Publication affords interested parties a chance to submit an offer of financial assistance, known as an OFA, proposing to subsidize or purchase the line that is to be abandoned. *See* 49 U.S.C. § 10904; 49 C.F.R. § 1152.27. If a prospective purchaser and incumbent carrier agree to a purchase that will maintain service, the Board approves the sale and—again of significance to this case—dismisses the notice of exemption. *See* 49 C.F.R. § 1152.27(f)(2).

In July 1996, Conrail filed a notice of exemption proposing to abandon two rail lines running for several miles through Erie County, New York. As required by section 1152.50(b), Conrail's notice contained a certification that no traffic had moved over the lines for the previous two years. Responding to the Federal Register notice, R.J. Corman Railroad Company/Allentown Lines, Inc. (RJCN) filed an OFA proposing to acquire the two lines and to continue service. Conrail agreed to sell the lines to RJCN, and the Board approved the sale and dismissed Conrail's notice of exemption.

Approximately eighteen months later, petitioner Buffalo Crushed Stone, a shipper located near one of the lines, filed a petition with the Board to vacate Conrail's previously dismissed exemption notice. According to Buffalo, Conrail had falsely certified that no traffic had moved across the lines for the two years prior to the filing of the notice. Buffalo knew the certification was false because it had shipped at least twelve carloads of crushed stone over the lines during the relevant two year period. Relying on section 1152.50(d)(3), Buffalo argued that the exemption was

"void *ab initio*" and that the Board must "summarily reject" the notice. Buffalo also urged the Board to revoke the sale to RJCN, since that transfer resulted from OFA procedures that had been triggered by the defective notice. Conrail never disputed the falsity of the certification, claiming instead that the mistake was "*de minimis*" and "inadvertent."

Buffalo also filed a formal complaint alleging that RJCN had refused to provide service to it across one of the lines acquired from Conrail and had discriminated against it by demanding unreasonable rates. According to Buffalo, this gave the Board an additional reason for revoking the sale. Alternatively, Buffalo asked the Board to order RJCN to provide it with trackage rights for reasonable fees.

The Board rejected Buffalo's petition to revoke the sale and dismissed its complaint against RJCN. Although the Board conceded that false information in an exemption notice normally results in a declaration that the notice is void *ab initio*, it identified several reasons why such action was inappropriate in the circumstances of this case. For one thing, vacating the exemption notice and subsequent sale would unfairly disadvantage RJCN, a bona fide purchaser who had acquired the line under section 10904's OFA procedures. More generally, the Board found that nullifying the sale would cause future OFA purchasers "to worry that their rights to the lines they acquire might be abrogated months and perhaps years later because of some defect in the underlying abandonment." The Board feared this would discourage the use of OFAs, thus "derogating section 10904." Finally, the Board pointed out that Buffalo—the very party who had utilized Conrail's lines and had actual knowledge of the certification's falsity—waited almost two years to register its objection. Declining to decide whether that factor alone would be dispositive, the Board said that Buffalo's failure to challenge the notice in a timely fashion supported denial of the petition.

Turning to Buffalo's complaint against RJCN, the Board found the refusal of service and discrimination claims unsupported by the record. Although Buffalo had asked for and received a rate quote from RJCN, the Board found nothing in the record indicating that Buffalo had either tendered traffic to move over the line or discussed such traffic with RJCN. The Board also noted that crushed stone, the commodity Buffalo wanted to ship, is exempt from Board regulation, *see* 49 C.F.R. § 1039.11(a), and that under the circumstances of this case the Board lacked jurisdiction to grant Buffalo trackage rights.

In this petition for review, Buffalo does not challenge the dismissal of its complaint against RJCN. It challenges only the Board's denial of its petition, claiming that section 1152.50(d)(3) requires the Board to reject the exemption notice and revoke the sale, and that the Board's failure to do so was arbitrary and capricious.

## II.

■ We begin by emphasizing our highly deferential standard of review. An agency's interpretation of its own regulation merits even greater deference than its interpretation of the statute that it administers. *See, e.g., Bush–Quayle Primary Comm., Inc., v. FEC,* 104 F.3d 448, 452 (D.C.Cir.1997) ("The call for deference is even greater where the agency is interpreting its own regulations."). Where "the meaning of [regulatory] language is not free from doubt," we will defer to the agency's interpretation so long as it "sensibly conforms to the purpose and wording of the regulations." *Martin v. OSHRC,* 499 U.S. 144, 150–51, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991) (alteration in original) (internal quotation marks omitted). We have even permitted an agency to infer the existence of a missing term in a regulation when the inference found support in the regulation's purpose and history. *See Western Mass. Elec. Co. v. FERC,* 165 F.3d 922 (D.C.Cir.1999). But deference is not without limit. We will reject an agen-

cy's interpretation if "an alternative reading is compelled by the regulation's plain language or by other indications of . . . intent at the time of the regulation's promulgation." *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (internal quotation marks omitted).

■ According to Buffalo, section 1152.50(d)(3) admits of no ambiguity. The regulation says quite plainly that if a notice of exemption "contains false or misleading information, the use of the exemption is void *ab initio* and the Board shall summarily reject the exemption notice." 49 C.F.R. § 1152.50(d)(3). Buffalo argues that, because it is undisputed that Conrail's notice contained a false certification, the exemption is "void *ab initio,*" and that the Board must "summarily reject" it and revoke the sale to RJCN.

Although at first glance section 1152.50(d)(3) does seem unambiguous, the Board points out that it is not at all clear how that provision should be applied in the unusual circumstances of this case. Beginning with the phrase "shall summarily reject," the Board argues that the regulation "does not address what action should be taken if rejection of the notice is no longer an available or appropriate remedy due to intervening circumstances." Rejection of the notice in this case is not "an available or appropriate remedy" for an obvious reason: the Board dismissed the notice when RJCN purchased the lines (the "intervening circumstance"). The Board's position is well taken. How can it reject a notice of exemption that has long since been dismissed? Since it cannot, we agree that in the circumstances of this case section 1152.50(d)(3) does not unambiguously require the Board to "summarily reject the exemption notice."

■ This leaves the question whether the regulation requires the Board to declare the notice "void *ab initio.*" According to Buffalo, because "[v]oid *ab initio* means that a notice based on false infor-

mation is void from the beginning, as if it never existed," the OFA sale to RJCN must be nullified since that transaction resulted from the filing of the defective exemption notice. The Board responds that although "[o]ur practice of revoking abandonments authorized pursuant to the class exemption is predicated on the need to maintain the integrity of the applicable regulations . . . that purpose is not served when upholding the class exemption can only be achieved at the expense of derogating section 10904 of the statute." In other words, the Board found that cancellation of the sale would discourage the use of OFA procedures and thus undermine section 10904's goal of maintaining rail service. *See The Burlington Northern and Santa Fe Railway Company—Abandonment Exemption—in King County, WA,* STB Docket No. AB–6 (Sub–No. 380X), 1998 WL 452837 (I.C.C.) (noting that the "fundamental purpose of section 10904 [is] to continue rail service").

■ Courts are not helpless captives when a literal application of statutory language would subvert a regulatory scheme. Where such a conflict exists, it is appropriate to consider the purpose of the disputed provision and to construe the text accordingly. *See, e.g., Train v. Colorado Public Interest Research Group,* 426 U.S. 1, 24, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976). Judge Learned Hand put it this way:

> Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing. . . . But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning.

*Cabell v. Markham,* 148 F.2d 737, 739 (2d Cir.), *aff'd,* 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945). Administrative agencies face similar interpretive challenges and

must be able to respond with similar resourcefulness. *See American Train Dispatchers Assoc. v. ICC,* 54 F.3d 842, 850 (D.C.Cir.1995) ("[A] regulatory interpretation must be, among other things, consistent with the regulatory scheme."). Demonstrating just that resourcefulness in this case, the Board properly construed section 1152.50(d)(3) to avoid undermining an independent statutory mandate.

■ Buffalo argues that "even if the Court finds that the Board did have … discretion [to uphold the notice of exemption], the Board did not exercise its discretion in a rational manner." We take this to mean that Buffalo thinks the Board violated section 706(2)(A) of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A). In support of its argument, Buffalo contends that the Board's decision in this case departed from its practice of strictly enforcing section 1152.50(d)(3) and failed "to take into account the prejudice sustained by [Buffalo]." We disagree on both counts. Not one of the cases cited by Buffalo for the proposition that the Board always rejects exemption notices with false information involved a completed OFA sale. Moreover, the Board's action preserved the integrity of section 10904's OFA procedures, protected a bona fide purchaser, and promoted the goals of the statute. At the same time, the Board denied relief to a party who, having slept on its rights, sought to abrogate a long completed sale so that (as it freely admits) it could bid on the lines itself.

The Board's articulation of a reasoned basis for its decision distinguishes this case from *Jost v. STB,* 194 F.3d 79 (D.C.Cir. 1999). Decided just last week, *Jost* involved a challenge to a notice of exemption that was filed six days after the subject line was conveyed to the Central Kansas Conservancy to be used as a trail, with the possibility that rail service would be resumed in the future. Relying on section 1152.50(d)(3), the challenge alleged that the notice of exemption was false and mis-

leading because it failed to inform the Board about right-of-way sales by the railroad that potentially made the line unusable as a trail and that might interfere with future rail service. The Board declined to reopen the proceedings but failed to explain why its discovery of the sales did not merit reconsideration of its prior actions. We remanded so the Board could remedy that deficiency. "The Board needs to articulate how it proceeds when faced with an allegation that sales of full-width right-of-way have occurred, and why it believes that practice is consistent with statutory requirements governing its jurisdiction.… At that point, if petitioners are still dissatisfied, this court will have something to review." *Jost v. STB,* 194 F.3d at 88.

In this case, the Board has adequately articulated the reasons for its decision. Because we find the Board's refusal to cancel the sale neither arbitrary nor capricious, the petition for review is denied.

*So ordered.*