**MONTGOMERY KONE, INC. Petitioner,**

v.

**SECRETARY OF LABOR, Respondent.**

No. 00–1029.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 17, 2000.

Decided Dec. 22, 2000.

W. Scott Railton argued the cause for petitioner. With him on the briefs was Paul J. Waters.

Jill M. Lashay was on the brief for amicus curiae National Elevator Industry, Inc.

Lee Grabel, Attorney, U.S. Department of Labor, argued the cause for respondent. With him on the briefs were Joseph M. Woodward, Associate Solicitor, and Bruce Justh, Counsel.

Before: WILLIAMS, RANDOLPH and TATEL, Circuit Judges.

TATEL, Circuit Judge:

Following an explosion in an elevator pit, the Secretary of Labor fined petitioner for failing to provide special training required by OSHA regulations for workers who must enter "confined spaces." Finding the agency's interpretation of its own regulations reasonable and its decision supported by substantial evidence, we affirm.

### I

Occupational Safety and Health Administration regulations governing safety training in the construction industry provide that workers required to enter "confined or enclosed spaces" must receive special training "as to the nature of the hazards involved, the necessary precautions to be taken, and in the use of protective and emergency equipment." 29 C.F.R. § 1926.21(b)(6)(i). In language central to this case, the regulations define a confined space as "any space having limited means of egress, which is subject to the accumulation of toxic or flammable contaminants or has an oxygen deficient atmosphere." 29 C.F.R. § 1926.21(b)(6)(ii).

The space involved in this case is a pit at the base of an elevator in a United States Post Office truck terminal in Philadelphia. Located beneath the elevator's floor line, the pit is about four feet, ten inches deep and measures twelve feet by sixteen to eighteen feet across. During the period of time involved in this case, the floor of the pit could only be reached with ladders: a permanent metal ladder was attached to one wall; an orange extension ladder and a six-foot fiberglass ladder leaned against two other walls; and a wooden A-frame ladder stood in the center. *Sec'y of Labor v. Montgomery KONE, Inc.*, 1999 OSHRC No. 37 at 3.

Petitioner Montgomery KONE had a contract to modernize the terminal's elevators. To accommodate the piston that powered the hydraulic mechanism of one of the elevators, a seventy-two foot shaft was drilled into the pit's base. To protect the piston from corrosion, the shaft had to be lined with polyvinyl chloride ("PVC") plastic pipe, which came in several sections. Using PVC primer and liquid cement, both of which contain flammable solvents that produce vapors 2.5 times heavier than air, Montgomery KONE employees working in the pit glued the sections together and then lowered the assembled pipe into the shaft. Not long thereafter, when a worker in the pit smelled fumes, a supervisor directed the workers to insert a compressed air hose into the shaft to expel the fumes.

Approximately a week to ten days after the PVC liner was installed, while a Montgomery KONE worker assembling the hydraulic mechanism was using a welding torch, an explosion blew the PVC pipe out of the shaft. The force of the explosion threw the worker against the pit's wall,

causing multiple leg injuries. Another worker, also thrown against the wall, temporarily lost hearing in his left ear. The two workers escaped by climbing the extension ladder, the only remaining way out—the explosion had cut the wooden ladder at the back of the shaft in two, access to the iron ladder was blocked, and the fiberglass ladder was not in the pit.

Following an inspection by OSHA Compliance Officers the next day, the Secretary of Labor cited Montgomery KONE for violating the confined space training regulations and proposed a $3500 fine. Montgomery KONE contested the citation, triggering an evidentiary hearing before an Administrative Law Judge. The ALJ vacated the citation, finding that even though the pit satisfied one of section 1926.21(b)(6)(ii)'s requirements—it was subject to the accumulation of flammable contaminants—it did not qualify as a confined space because it failed the other requirement: due to the presence of ladders, the means of egress was not "limited." *See Sec'y of Labor v. Parsons Brinckerhoff Constr. Services, Inc.*, ALJ Decision and Order at 6–7. Reversing the ALJ, the Occupational Safety and Health Review Commission found that "conditions encountered in the elevator pit constituted a limited means of egress" both because escape required climbing a ladder and because "[w]hen the explosion occurred and the lights went out, the two employees had to feel their way around in the dark until they found each other, then found the ladder and helped each other get out of the pit." 1999 OSHRC No. 37 at 9. Finding that Montgomery KONE failed to provide confined space training, the Commission imposed the $3500 fine. *See id.* at 11. Montgomery KONE appeals, arguing that (1) because of the presence of ladders, egress from the pit was not limited, and (2) evidence demonstrates that the pit was not subject to the accumulation of flammable contaminants.

## II

As usual in cases of this kind, the outcome turns largely on the standard of review. Unlike in most administrative cases, however, here we review the actions of two different entities, each of which has a different function in the statute's enforcement scheme. *See* Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651–78. The Secretary promulgates and enforces regulations; the Commission has fact-finding and adjudicatory powers. *See S.G. Loewendick & Sons, Inc. v. Reich*, 70 F.3d 1291, 1294 (D.C.Cir.1995). As a result, we defer to the Secretary's interpretation of OSHA regulations and to the Commission's fact-finding. *See id.* at 1294.

In this case, the bifurcated standard of review has no practical consequence. Not only does Montgomery KONE make nothing of it, but in her brief, the Secretary expressly adopts the Commission's interpretation of section 1926.21(b)(6)(ii) as well as its factual conclusions. Notwithstanding the involvement of two agencies, moreover, our review is guided by traditional principles of administrative law. Of particular importance to this case, an agency's interpretation of its own regulations "merits even greater deference than its interpretation of the statute that it administers." *Buffalo Crushed Stone, Inc. v. Surface Transp. Bd.*, 194 F.3d 125, 128 (D.C.Cir.1999). We will defer to the Secretary's interpretation so long as it "sensibly conforms to the purpose and wording of the regulations." *Id.* at 128. We will accept the Commission's findings of fact if they are supported by "substantial evidence" and the Commission's other findings and conclusions "if they are not arbitrary, capricious, an abuse of discretion, or contrary to law." *Loewendick*, 70 F.3d at 1294.

With this highly deferential standard in mind, we turn to Montgomery KONE's arguments that the Commission's interpretation of the two elements of the confined space regulation—"limited ... egress" and "subject to the accumulation of ... flam-

mable contaminants"—is unreasonable, and that its findings with respect to each are unsupported by substantial evidence.

## Limited Egress

■ To elucidate the meaning of "limited," the Commission looked to Webster's *New Collegiate Dictionary,* which defines the word to mean "restricted." *See* 1999 OSHRC No. 37 at 8. The Commission then found that both physical and testimonial evidence demonstrated that egress from the pit was restricted. Not only did photographic and video evidence show that the only way out of the pit was through the use of ladders, but both workers testified that in order to escape from the pit after the explosion, they had to maneuver around obstacles and then find and climb a ladder. One of the workers testified that, confused and disoriented, he felt his way in the dark until he found his co-worker, who in turn testified that he could neither hear nor see. Both testified that they helped each other escape from the pit. Based on such testimony, the Commission concluded that "[t]he employees may have been able to climb out of the elevator pit without further problems, but the fact that they had to assist one another supports our conclusion that their means of egress was limited." *Id.* at 9. The Secretary agrees, explaining in her brief that "any means of egress is 'limited' for the purposes of this standard unless it allows unimpeded egress even under emergency conditions."

On appeal, Montgomery KONE points out—as it did before the Commission— that a different OSHA regulation, one that regulates the safety of trench excavations, expressly provides that ladders are a "safe means of egress." 29 C.F.R. § 1926.651(c)(2). The Commission rejected this argument: "The fact that ladders are a 'safe' means of egress from a trench for purposes of compliance with the excavation standard does not mean that they are not a 'limited' means of egress for purposes of defining a confined space." *See* 1999 OSHRC No. 37 at 8. Indeed, in

a previous decision involving the excavation regulations, the Commission found that egress that may not be "entirely free of difficulty" may still be "safe." *Sec'y of Labor v. C.J. Hughes Constr., Inc.,* 17 O.S.H. Cas. (BNA) 1753, 1754–56 (1996). In view of this, and because the excavation and confined space regulations deal with different situations, the Commission's position in this case seems eminently reasonable.

Equally without merit is Montgomery KONE's argument that "egress" was not limited because the workers in fact had no difficulty escaping from the pit. To be sure, one worker did so testify. But the question we face is not whether Montgomery KONE can unearth evidence to support its view of what happened, but whether substantial evidence in the record supports the Commission's version of events. *See Harter Tomato Prods. Co. v. NLRB,* 133 F.3d 934, 938 (D.C.Cir.1998). Here, the question is not even close. Not only does photographic and video evidence demonstrate that ladders provided the only means of egress from the pit, but workers testified that after the explosion, they had trouble getting out. One worker testified:

> I fell down into that area and I just sat there stunned and I heard Lou who was on the ladder on his way out. There was maybe two more rungs that he had to climb to get out so he had maybe a foot to a foot and a half. He's still on the ladder and he says I.... I can't see. I can't hear.... So we held each other, went up the other two rungs, got to the front of the pit and we let go of each other.

According to the other worker:

> I was just pushed against the wall from the blast.... The lights went out. I lost the hearing in my left ear.... I couldn't hear.... As I said the lights did go out and I started calling for Dan and I couldn't see Dan because of the darkness. Seconds later I felt Dan's hand on my shoulder saying let's get out

and we both got up the ladder and climbed out of the pit.

Given this evidence and our deferential standard of review, we cannot imagine a basis for setting aside the Commission's determination that in precisely the kind of circumstances contemplated by these regulations—an explosion resulting from the use of flammable materials—an almost five-foot deep pit from which workers escaped only with the aid of a single ladder satisfied the "limited egress" prong of the confined space regulation.

### Subject to the Accumulation of Toxic or Flammable Contaminants

■ The Commission concluded that "[t]he record clearly shows that the elevator pit became subject to the accumulation of heavier-than-air flammable vapors once Montgomery KONE introduced the PVC primer and cement into the pit." 1999 OSHRC No. 37 at 6. In reaching this conclusion, the Commission rejected Montgomery KONE's argument that the confined space regulations did not apply because the company, having attempted to purge the vapors from the shaft, could not have known they might remain over a week later. According to the Commission, "[w]here, as here ... an employer is responsible for introducing chemicals into the workplace, it also has a duty to learn about the characteristics of those chemicals and to determine any dangerous conditions to which the employees may be exposed as a result." *Id.* at 6. The Commission explained:

> The material safety data sheets for both the PVC primer and the PVC cement indicate that the vapor density is 2.49 times that of air. That information should have informed Montgomery KONE's employees that they were dealing with vapors that would not all be blown out of the seventy-foot-deep PVC liner with the compressed air they were using.

*Id.* at 7. And in response to Montgomery KONE's evidence that air samples taken from the pit both before and after the explosion revealed no abnormalities, the Commission explained that whether the pit's atmosphere was actually contaminated at the time of the explosion had nothing to do with whether the pit qualified as a confined space. Rather, "the presence of the flammable vapors in the PVC cylinder demonstrates that the elevator pit was subject to the accumulation of flammable contaminants." 1999 OSHRC No. 37 at 8.

Montgomery KONE now reiterates its argument that tests conducted before and after the explosion detected no vapors in the pit. It also points out that for three days prior to the explosion, workers operated welding equipment in the pit without incident. Finally, the company claims that the explosion occurred in the shaft, not the pit, and that because the shaft and the pit were separate spaces, the pit was not subject to the accumulation of flammable contaminants.

All these arguments rest on a misunderstanding of the Commission's reason for finding that the elevator pit was subject to the accumulation of flammable contaminants. To the Commission, it made no difference that vapors had not been detected either before or after the explosion, that no explosion occurred during previous welding activity, or that the explosion may have occurred in the shaft, not the pit. Instead, the Commission found—and the Secretary agrees—that the presence in the shaft of flammable contaminants 2.5 times heavier than air effectively made the pit "subject to the accumulation of ... flammable contaminants." The Secretary cites the ALJ's finding approvingly:

> "The statement that there is no relationship between the explosion and the elevator pit blinks at reality.... [T]he effects of the explosion were felt in the pit.... To hold that this pit does not fall within the definition set out in § 1926.21(b)(6)(ii) because a flammable gas accumulated and exploded in a cylinder placed in a hole in the pit's floor, rather than in the pit itself, elevates

technical distinctions to an unwarranted level of importance." ALJ Decision and Order at 5–6. Given the deference we owe an agency regarding the interpretation of its own regulations, and given the evidence in the record of heavier-than-air vapors in the shaft, we see no basis for overturning the Commission's conclusion that the pit met the second prong of the confined space standard.

### III

In light of the fact that the pit qualified as a confined space within the meaning of section 1926.21(b)(6)(ii), Montgomery KONE had an obligation to provide confined space training pursuant to 29 C.F.R. § 1926.21(b)(6)(i): "[a]ll employees required to enter into confined or enclosed spaces shall be instructed as to the nature of the hazards involved, the necessary precautions to be taken, and in the use of protective and emergency equipment required." Reviewing the record, the Commission concluded that Montgomery KONE failed to provide confined space training to workers required to enter the elevator pit. *See* 1999 OSHRC No. 37 at 6. Indeed, according to the Commission, the workers' immediate supervisor expressly testified that "the company did not provide confined space training because it did not work in any confined spaces." *Id.* at 6 n. 3.

Montgomery KONE argues that it had no reason to believe that the precautions it took to guard against the accumulation of flammable vapors were insufficient to prevent the explosion. As the Secretary points out, however, this has nothing to do with Montgomery KONE's obligations under the confined space training regulation. Given the supervisor's concession that the company provided no confined space training, we affirm the Commission's order and citation.

*So ordered.*