Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 15, 2004        Decided June 4, 2004

No. 03-1208

FABI CONSTRUCTION COMPANY, INC.,
PETITIONER

v.

SECRETARY OF LABOR,
RESPONDENT

On Petition for Review of an Order of the
Occupational Safety and Health Review Commission

*Joseph P. Paranac, Jr.* argued the cause for the petitioner.

*Michael P. Doyle*, Attorney, United States Department of Labor, argued the cause for the respondent. *Allen H. Feldman*, Associate Solicitor, and *Nathaniel I. Spiller*, Deputy Associate Solicitor, United States Department of Labor, were on brief.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: EDWARDS and HENDERSON, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The Secretary of Labor (Secretary), through the Occupational Safety and Health Administration (OSHA), cited Fabi Construction Co. (Fabi) for eight violations of OSHA safety regulations after one of Fabi's employees suffered a fatal fall while demolishing a "knock-out" panel on the roof of a 10–story garage. Fabi challenges each of the eight findings of violation. For the reasons set out below, we reject each of Fabi's challenges and uphold the citations affirmed by the Occupational Safety and Health Review Commission (Commission or OSHRC), 20 O.S.H. Cas. (BNA) 1535 (2003). That said, with regard to the citations relating to the demolition itself (Citation 1, items 1a, 2, 3a; Citation 2, item 1), we find it troubling that the Secretary cited Fabi only for failure to instruct and train demolition workers and to ensure the panel integrity rather than for using improper techniques to carry out the demolition.[1] The Secretary's decision in this respect is particularly problematic because as a consequence the Commission was not called upon to consider and failed to identify what specific safety measures Fabi should have employed—but did not—during the actual demolition. Nonetheless, we agree with the Commission that the danger in the demolition method used—drilling holes in concrete slabs while standing atop them—was plain enough to put Fabi on notice of the need to adequately implement demolition safety measures and that the evidence supports the findings that Fabi did not do so. Accordingly, we cannot say that it was error for the Commission to uphold the Secretary's citation of Fabi for failure to warn and instruct in advance only and not for improperly implementing the demolition itself. *Cf. W.G. Fairfield Co. v. OSHRC*, 285 F.3d 499 (6th Cir. 2002) (employer with actual knowledge that trench-digging employees crossed busy inter-

---

[1] OSHA has promulgated specific regulations governing demolition. *See* 29 C.F.R. pt. 1926, subpt. T (29 C.F.R. §§ 1926.850–1926.860).

state in course of work and took no steps to prevent it violated 29 C.F.R. § 1926.20(b)(1)).[2]

## I.

Fabi was a subcontractor performing concrete installation and demolition work for the construction of a 21-story Trop-World Hotel addition atop an existing 10-story parking garage in Atlantic City, NJ. Among Fabi's assignments was demolition of a number of concrete "knockout" panels (or slabs) that had been installed when the garage was built to accommodate future expansion. On February 5, 1995 Fabi demolished three knockout panels covering elevator pits on the ground floor of the garage. Four days later, on February 9, 1995, Fabi demolished two knockout panels covering elevator shafts on the second floor. In each instance, before actual demolition of the panel, workers stood on top of the panel and drilled a pilot hole with a jackhammer to find out the type and position of the steel bars, or "rebar," used to reinforce the panels. With this knowledge, workers hammered away concrete at locations along the slab's perimeter where the rebar should be and then sawed through the rebar. Each of the 5 panels was demolished without incident.

Three panels remained to be demolished on the garage roof: one over a stairway and two over elevator shafts. The rooftop stairway panel was, like the previous five panels, demolished without incident. The first rooftop elevator panel was scheduled for demolition on Saturday, June 10, 1995, by employees Thomas Kane and Frank Caucci, under the supervision of foreman Charles Cincotti. Kane had been hired by Fabi the previous month and Caucci the previous week. This was the first knockout panel demolition project at TropWorld for both. Before they began the demolition work, Cincotti gave them the following instruction:

> We'll shoot our pilot hole, we'll look for our rebar, if anything doesn't look, you know, where it should be,

---

[2] We note that Fabi has not objected to the Secretary's citation specification.

you stop the job. And we would call it a day. Until we could discuss it.

Hearing Tr. (Tr.) 281–82. When they began the task, Kane stood on top of the panel with a jackhammer and drilled a pilot hole in the southeast corner of the panel to check the rebar. While he was jackhammering, Kane noticed two or three stress cracks emanating from the pilot hole. At Kane's direction, Caucci periodically stepped onto the panel to strike the pilot hole area with a sledgehammer. The final time he did so, the northwest corner of the slab tilted up and the slab fell into the shaft, carrying Kane and Caucci with it. Kane managed to grab onto the floor below but Caucci fell down the shaft to his death.

On June 10, 1995 OSHA began an investigation of Caucci's death. On December 8, 1995 OSHA issued Fabi three citations specifying thirteen safety violations. After a five-day evidentiary hearing, the administrative law judge (ALJ) affirmed eight of the cited violations and assessed fines totaling $31,500. *Sec'y v. Fabi Constr. Co.*, No. 96–0097 (filed April 8, 1998), (ALJ Dec.). The Commission upheld the eight violations and the penalties as assessed by the ALJ, concluding, without elaboration, that her "decision finding that Fabi violated the Act with respect to the citations at issue on review is supported by the evidence and applicable legal precedent." *Sec'y v. Fabi Constr. Co.*, No. 96–0097, slip op. at 2 (May 30, 2003) (Comm'n Dec). Fabi filed a timely petition for review of the Commission's decision.

## II.

Fabi challenges each of the violations affirmed by the Commission. Our review of the Commission's decision is deferential. We must treat as "conclusive" the Commission's findings of fact so long as they are "supported by substantial evidence on the record considered as a whole," 29 U.S.C. § 660(a); and we may "set aside the Commission's application of legal standards to facts only if it is arbitrary, capricious, an abuse of discretion, or contrary to law." *American*

*Bridge/Lashcon v. Reich*, 70 F.3d 131, 133 (D.C. Cir. 1995) (citing 5 U.S.C. § 706(2)(A); *Century Steel Erectors, Inc. v. Dole*, 888 F.2d 1399, 1403 (D.C. Cir. 1989)). Applying these standards, we reject each of Fabi's challenges in turn.

### A. Citation 1, item 1a

First, the Commission found a serious[3] violation of 29 C.F.R. § 1926.20(b)(1) and assessed a penalty of $5,000. Section 1926.20(b)(1) provides: "It shall be the responsibility of the employer to initiate and maintain such programs as may be necessary to comply with [Part 1926 of title 29]."[4] The ALJ found Fabi violated this provision because, although Fabi maintained a written safety program and conducted weekly on-site "toolbox talks" on various safety issues, "Fabi failed to fully implement and maintain a safety program with specific instructions about what precautions to take when performing demolition." ALJ Dec. at 7. Fabi challenges this finding on both legal and factual grounds.

First, Fabi contends the Commission has not previously interpreted section 1926.20(b)(1) to require "task specific training and instructions on demolition." Pet'r Br. 1. Fabi is incorrect. In *Sec'y v. Northwood Stone & Asphalt*, 16 O.S.H. Cas. (BNA) 2097 (1994), the Commission interpreted section 1926.20(b)(1) to mean that "an employer may reasonably be expected to conform its safety program to any known duties and . . . a safety program must include those measures for detecting and correcting hazards which a reasonably prudent employer similarly situated would adopt" and held that "a reasonably prudent employer in [the employer's] position, having experienced numerous prior instances of a truck's becoming entangled in overhead power lines, would have understood that an adequate safety program under section 1926.20(b)(1) would include specific measures to be taken

---

[3] The Occupational Safety and Health Act sets three degrees of violation, in order of decreasing severity: "willful," "serious" and "not serious" (or "other than serious"). 29 U.S.C. § 666.

[4] Part 1926 contains "Safety and Health Regulations for Construction."

when a dump truck became entangled in overhead electrical lines." *Northwood Stone & Asphalt*, 16 O.S.H. Cas. (BNA) at 2099 (1994).[5] Consistent with precedent, the Commission here applied section 1926.20(b)(1) to conclude that a reasonably prudent employer should be aware of the dangers inherent in demolition—and that Fabi was in fact aware of them as demonstrated by its use of a demolition safety video which it showed to some, but not all, of its demolition workers—yet failed to adequately implement a safety program addressing the hazards.

Fabi next challenges the evidentiary sufficiency for the citation, contending that in fact "numerous Fabi employees" testified they had "received specific instructions on topics integral to demolition safety." Pet'r Br. 4. The ALJ adequately responded to this argument in finding the following facts, supported by the record: Fabi's written program did not specifically address "demolition," Fabi's Weekly Jobsite Safety Meeting Reports did not disclose any toolbox meeting addressing demolition hazards in particular, there was no evidence Caucci or Kane attended any tool box meeting addressing any but the most basic demolition safety measures,[6] Fabi's demolition video was not shown to all demolition employees—in fact it was not shown to anyone hired after early spring, including both Kane and Caucci—and new hires were simply given only "brief guidelines" of the written

---

[5] Although Fabi challenges the Commission's interpretation of section 1926.20(b)(1), Pet'r Br. at 3, we note that we will defer to the Commission's interpretation, as expressly adopted in the Secretary's brief, *see* Respondent Br. 23–24, "so long as it 'sensibly conforms to the purpose and wording of the regulations.'" *Montgomery KONE, Inc. v. Sec'y*, 234 F.3d 720, 722 (D.C. Cir. 2000) (quoting *Buffalo Crushed Stone, Inc. v. Surface Transp. Bd.*, 194 F.3d 125, 128 (D.C. Cir. 1999)).

[6] There is no evidence that Caucci attended any meetings on demolition safety. Kane testified that the demolition topics covered in talks he attended were "just basic, you know, stuff like, you know, if you are working with a jackhammer you would need goggles, dust mask, hearing protection, and the safetying off of areas that were to be demoed." Tr. 877.

program and told the full program was available for their review.[7]

### *B.  Citation 2, Item 1*

Second, Fabi challenges the citation for serious violation of 29 C.F.R. § 1926.21(b)(2), for which it was assessed a $7,000 penalty.  Section 1926.21(b)(2) provides: "The employer shall instruct each employee in the recognition and avoidance of unsafe conditions and the regulations applicable to his work environment to control or eliminate any hazards or other exposure to illness or injury."  We affirm the Commission's determination that Fabi violated this regulation.

Fabi contends that section 1926.21(b)(2) was not "meant to extend 'to all aspects of an employee's job training' or 'to govern specific employer instructions for each particular task.'" Pet'r Br. 6 (quoting *Klug & Smith Constr., Inc.*, 15 O.S.H. Cas. (BNA) 1204 (1991)).[8] As the ALJ noted, however, the Commission has given the provision just such a construction:

> Section 1926.21(b)(2) requires instructions to employ-ees on (1) how to recognize and avoid unsafe conditions

---

[7]    Fabi relies on two decisions—*Sec'y v. Capitol Tunneling*, 15 O.S.H. Cas. (BNA) 1304 (1991), and *Sec'y v. Odyssey Contracting Corp*, 16 O.S.H. Cas. (BNA) 1753 (1994)—to argue that its safety programs were adequate.  These two unreviewed ALJ decisions, however, are without precedential value.  *See Sec'y v. Star Brite Constr. Co.*, 19 O.S.H. Cas. (BNA) 1687, 2001 WL 1668967, at *4 n.8 (2001) ("Unreviewed administrative law judge decisions have no precedential value.") (citing *Sec'y v. Leone Constr. Co.*, 3 O.S.H. Cas. (BNA) 1979 (1976)); *accord In re Cerro Copper Prods. Co.*, 752 F.2d 280, 284 (7th Cir. 1985); *Fred Wilson Drilling Co. v. Mar-shall*, 624 F.2d 38, 40 (5th Cir. 1980); *Willamette Iron & Steel Co. v. Sec'y*, 604 F.2d 1177, 1180 (9th Cir. 1979), *cert. denied*, 445 U.S. 942 (1980); *cf. Stanford Hosp. & Clinics v. Nat'l Labor Relations Bd.*, 325 F.3d 334, 345 (D.C. Cir.  2003) (ALJ decision to which excep-tions are not filed with National Labor Relations Board has "no precedential value").

[8]    *Klug & Smith*, on which Fabi relies, is an unreviewed ALJ decision and is therefore without precedential value.  *See supra* note 7.

> they may encounter on the job, and (2) the regulations applicable to those hazardous conditions. . . . An employer's instructions are adequate under section 1926.21(b) if they are "specific enough to advise employees of the hazards associated with their work and the ways to avoid them" and are modeled on the applicable standards.

*Sec'y v. Superior Custom Cabinet Co.*, 18 O.S.H. Cas. 1019, 1020–21 (1997) (quoting *El Paso Crane & Rigging Co.*, 16 O.S.H. Cas. at 1425 nn.6 & 7 (1993); internal citations omitted); *cf. Sec'y v. Pressure Concrete Constr. Co.*, 15 O.S.H. Cas. (BNA) 2011, 2015 (1992) (in interpreting section 1926.21(b)(2), "the Commission and the courts have held that an employer must instruct its employees in the recognition and avoidance of those hazards of which a reasonably prudent employer would have been aware").[9] Because the Secretary has agreed with the Commission's interpretation of the regulation, *see* Respondent Br. 23–24, we defer to the interpretation and uphold it "so long as it 'sensibly conforms to the purpose and wording of the regulations.'" *Montgomery KONE, Inc. v. Secretary of Labor*, 234 F.3d 720, 722 (D.C. Cir. 2000) (quoting *Buffalo Crushed Stone, Inc. v. Surface Transp. Bd.*, 194 F.3d 125, 128 (D.C. Cir. 1999)). The Commission's interpretation so conforms. The Commission's individualized "reasonably prudent employer" standard is consistent with the regulation's directive that the employer "shall instruct *each* employee in the recognition and avoidance of unsafe conditions." (Emphasis added.) Further, the ALJ reasonably found that Fabi's instructions fell short of this standard. The ALJ specifically found that the sole "instruction" in the record—"Cincotti's instruction that 'if anything did not look, where it should be'" Kane and Caucci should stop demolition immediately—was not adequate because it

---

[9] Fabi asserts that "under Commission precedent"—namely *Capitol Tunneling*, 15 O.S.H. Cas. (BNA) 1304 (1991)—Fabi was "permitted . . . to rely on Mr. Kane's experience to perform the demolition of the slab properly and safely." Pet'r Br. 8. As previously noted, *supra* note 7, *Capitol Tunneling* is an unreviewed ALJ decision without precedential value.

"provides no advice as to what condition he was referring and provides no guidance or precautions as to what conditions would be hazardous" and thus "provide[s] no measures for detecting and correcting hazards, and gives the employees the discretion to determine what was unsafe." ALJ Dec. at 18. It is hard to quibble with the ALJ's characterization of Cincotti's vague instruction.

### C. Citation 1, Item 2

Third, Fabi challenges the citation for serious violation of 29 C.F.R. § 1926.503(a)(1), for which it was assessed a $5,000 penalty. Section 1926.503(a)(1) provides:

The following training provisions supplement and clarify the requirements of § 1926.21 regarding the hazards addressed in subpart M of this part.

(a) Training Program.

(1) The employer shall provide a training program for each employee who might be exposed to fall hazards. The program shall enable each employee to recognize the hazards of falling and shall train each employee in the procedures to be followed in order to minimize these hazards.

29 C.F.R. § 1926.503(a)(1).[10] Fabi challenges the citation on two grounds. We find neither persuasive.

First, Fabi asserts the Commission was mistaken in construing section 1926.503(a)(1) to require a training program that addresses fall hazards specific to each task employees perform. The Commission has interpreted section 1926.503(a)(1) to require that an employer "provide the instructions that a reasonably prudent employer would have given in the same circumstances," *Sec'y v. N & N Contractors, Inc.*, 18 O.S.H. Cas. (BNA) 2121, 2126 (2000). We defer to the Commission's interpretation because it has been adopted by the Secretary, *see* Respondent Br. 31, and it "sensibly conforms to the purpose and wording of the regula-

---

[10] Subpart M contains regulations addressing "Fall Protection."

tions,'" *Montgomery KONE, Inc.*, 234 F.3d at 722. The Commission's focus on the task-specific fall hazard training is consistent with the language of section 1926.503(a)(1) which expressly requires that an employer provide training "for *each* employee who *might be* exposed to fall hazards" that will "enable *each* employee to recognize the hazards of falling" and "to minimize these hazards." (Emphases added.)

Second, Fabi contends that even under the Commission's interpretation of the regulation, Fabi complied with its obligation to train employees regarding fall hazards during demolition. The ALJ found, however, that, while Fabi trained some employees on "floor hole openings, perimeter protection, and personal protective equipment during various phases of the job," it did not instruct "all of their employees in the recognition and avoidance of fall hazards while engaged in demolition, a component of their work activity." ALJ Dec. at 10. This finding is supported by the record, which contains no evidence that any employee received fall protection training specifically tailored to demolition or that Caucci received any fall protection training whatsoever before being assigned to demolish the slab but contains affirmative evidence that at least one employee received no safety training. *See* Tr. 726 (testimony of compliance officer that one interviewed employee received no safety training and others were "vague . . . as to what type of training" they received). Accordingly, we conclude the ALJ permissibly determined that Fabi did not satisfy its duty to instruct demolition employees on demolition fall hazards.

### D.  Citation 1, Item 3a

Fourth, Fabi challenges the citation for serious violation of 29 C.F.R. § 1926.501(a)(2), carrying a $7,000 penalty. Section 1926.501(a)(2) provides:

> The employer shall determine if the walking/working surfaces on which its employees are to work have the strength and structural integrity to support employees safely. Employees shall be allowed to work on those

surfaces only when the surfaces have the requisite strength and structural integrity.

The Commission determined that Fabi violated this standard because it "failed to exercise reasonable diligence in determining what effect, if any, the jack hammering and the creation of a hole would have on the strength and structural integrity of the slab," noting that Fabi's "visual review of the slab and its structural drawings only revealed the integrity of the slab undisturbed." ALJ Dec. at 12.

Fabi challenges the Commission's interpretation of 1926.501(a)(2) to prohibit work on a surface that is made unsound solely as a result of demolition, in the apparent belief that it has a duty to ensure a safe working surface only at the start of a project. The Commission reasonably determined otherwise. The Commission construes the second sentence of the regulation to require that the surface be sound whenever workers are present: "The plain language of the second sentence clearly permits employees 'to work on those surfaces only when the surfaces have the requisite strength and structural integrity.' " *Sec'y v. Agra Erectors, Inc.*, 19 O.S.H. Cas. (BNA) 1063, 1066 (2000) (citation omitted). Because, as the Commission indicated, its construction is consistent with the plain language of the regulation's second sentence and the Secretary has agreed, Respondent Br. 34, we defer to the Commission's interpretation, *Montgomery KONE, Inc.*, 234 F.3d at 722.

Fabi also contends the Commission's finding of a section 1926.501(a)(2) violation is inconsistent with the ALJ's own finding, in rejecting a separate citation against Fabi,[11] that

---

[11] The Secretary had cited Fabi for violating 29 C.F.R. § 1926.850(a) which provides in relevant part:

> Prior to permitting employees to start demolition operations, an engineering survey shall be made by a competent person, of the structure to determine the condition of the framing, floors, and walls, and possibility of unplanned collapse of any portion of the structure. Any adjacent structure where employees may be exposed shall also be similarly checked.

The ALJ vacated this citation.

site superintendent Troy Blevin competently "conducted a pre-demolition survey . . . to determine the condition of the slabs," which included "visual observations combined with his review of the demolition plans and structural plans" and "took into the consideration of [sic] the possibility of unplanned collapse." ALJ Dec. at 15. We see no such inconsistency. The ALJ based her finding of violation on Fabi's failure "to make a determination as to what the [sic] effect the pilot hole would have upon the strength and structural integrity of the slab . . . prior to the assignment." ALJ Dec. at 11. In so finding, the ALJ reasonably relied on "evidence from several witnesses which supports a finding that the strength and structural integrity of the slab was not maintained as the pilot hole was created," a proposition that should surprise no one.[12] ALJ Dec. at 11; Tr. 553 (testimony of expert witness Donald Orr); Tr. 555–57 (testimony of OSHA Engineering Chief Mohammad Ayub).[13]

### E. Citation 1, Item 4

Fifth, Fabi challenges the citation for serious violation of 29 C.F.R. § 1926.501(b)(1) for which Fabi was assessed a $7,000 penalty. Section 1926.501(b)(1) provides:

> Unprotected sides and edges. Each employee on a walking/working surface (horizontal and vertical surface) with an unprotected side or edge which is 6 feet (1.8 m) or more above a lower level shall be protected from falling

---

[12] Fabi also points to various other examinations by Fabi employees of both the slabs and the rebar, Pet'r Br. 12. but none of them took into account the effect of drilling on the slab's integrity.

[13] Fabi also argues that the ALJ's violation finding "ignores the critical fact that prior to the elevator slab's demolition, six slabs were safely demolished using exactly the same method as used in demolishing the elevator slab." Pet'r Br. 14. This "critical fact" simply means that in those instances the integrity was not weakened sufficiently to cause the slab to completely fall apart; it does not undermine the ALJ's logical finding, supported by the expert testimony, that drilling holes into the concrete weakens the integrity of the surface.

by the use of guardrail systems, safety net systems, or personal fall arrest systems.

We uphold the ALJ's finding that Fabi violated this regulation.

The ALJ based her finding of violation on the testimony of Compliance Officer Bernard DeZalia who visited the site on June 14, 1995 in response to a formal complaint about fall protection. DeZalia testified that he saw four men on the 36th floor stripping reshoring forms without any fall protection despite the proximity to an elevator shaft and to the unguarded perimeter of the building, which had fall distances of, respectively, 10 feet and 6 stories. DeZalia testified that he saw four workers "immediately adjacent to" the elevator shaft and two workers about 10–15 feet from the edge of the building, although he stated "they had been closer when we approached." Tr. 688–89. Fabi challenges DeZalia's credibility, pointing to Blevin's testimony that the employees were at least 18–21 feet from the edge and 14–16 feet from the elevator shaft. The ALJ was entitled to credit DeZalia over Blevin and we " 'must accept the ALJ's credibility determinations . . . unless they are patently unsupportable.' " *AJP Constr., Inc. v. Sec'y*, 357 F.3d 70, 73 (D.C. Cir. 2004) (quoting *Tasty Baking Co. v. Nat'l Labor Relations Bd.*, 254 F.3d 114, 124 (D.C. Cir. 2001)). The ALJ's determination here was not.[14]

### F. Citation 1, Item 5a

Sixth, Fabi challenges the citation for serious violation of 29 C.F.R. § 1926.501(b)(4)(i) and the accompanying $2,500 penalty. Section 1926.501(b)(4)(i) provides: "Each employee on walking/working surfaces shall be protected from falling through holes (including skylights) more than 6 feet (1.8 m) above lower levels, by personal fall arrest systems, covers, or guardrail systems erected around such holes." The ALJ

---

[14] Fabi argues that the ALJ's credibility determination was inconsistent with the decision in *Sec'y v. Delta Dry Wall, Inc.*, 15 OSHC (BNA) 1291, 1292–93 (1991), which is an unreviewed ALJ decision of no precedential value. *See supra* note 7.

based this finding of violation as well on DeZalia's testimony. DeZalia testified that on the 39th floor he observed a partially unguarded shaftway being used for access by ladders, presenting a 10–foot fall distance to the floor below. He further testified that Fabi carpenter Eugene Kabbeko told him Fabi employees had used the shaft ladders to access the 36th floor and identified as Fabi employees workers DeZalia saw climbing the ladder to the 39th floor. Fabi challenges the credibility of both DeZalia and Kabbeko[15] but again we accept the ALJ's credibility determinations because they are not " 'patently unsupportable.' " *AJP Constr., Inc.*, 357 F.3d at 73 (quoting *Tasty Baking Co.*, 254 F.3d at 124).[16]

### G. Citation 1, Items 6a and 6b

Seventh, Fabi challenges the citation, and accompanying $2,500 penalty, for serious violations of 29 C.F.R. § 1926.1052(b)(2) and 1926.1052(c)(1). These regulations provide:

> (b) Temporary service. The following requirements apply to all stairways as indicated:
>
> . . . .
>
> (2) Except during stairway construction, foot traffic is prohibited on skeleton metal stairs where permanent treads and/or landings are to be installed at a later date, unless the stairs are fitted with secured tempo-

---

[15] Fabi also asserts that to establish a violation of section 1926.501(b)(4)(i) the Secretary must demonstrate that access was "on a continuous and sustained basis," Pet'r Br. 18, citing as authority *Sec'y v. Century Steel Erectors, Inc*, 13 O.S.H. Cas. (BNA) 1484, 1485 (1987), which is an unreviewed ALJ decision of no precedential value. *See supra* note 7.

[16] The ALJ acknowledged that Kabbekko was subsequently discharged—according to Blevin because he refused to install fall safety protection—and that Blevin and Kabbeko were obviously not on good terms. Nonetheless, she expressly stated that, "in light of the fact [Kabbeko's] firing occurred after the inspection, the undersigned does not automatically discredit his identification of Fabi employees during the inspection." ALJ Dec. at 25.

rary treads and landings long enough to cover the entire tread and/or landing area.

. . . .

(c) Stairrails and handrails. The following requirements apply to all stairways as indicated:

(1) Stairways having four or more risers or rising more than 30 inches (76 cm), whichever is less, shall be equipped with:

(i) At least one handrail;  and

(ii) One stairrail system along each unprotected side or edge.

The ALJ based these violations also on DeZalia's testimony. DeZalia testified that metal stairways running from the 31st to the 34th floors had unfilled treads and landings and lacked handrails.  He further testified that he observed two persons using the stairs, whom Kabbeko identified as Fabi employees, and that a Fabi carpenter had told him Fabi employees used the stairways.

Again Fabi urges the court to prefer Blevin's contrary testimony over DeZalia's but again we accept the ALJ's permissible credibility findings. *See AJP Constr., Inc.*, 357 F.3d at 73.[17]  Fabi also asserts it did not violate section 1926.1052(b)(2) or (c)(1) because it neither installed nor controlled the stairway.  Under Commission precedent, to establish the multi-employer worksite defense an employer must prove by a preponderance of the evidence that it "(1) did not create the hazardous condition, (2) did not control the violative condition such that it could have realistically abated the condition in the manner required by the standard, and (3) took reasonable alternative steps to protect its employees or did not have (and could not have had with the exercise of reasonable diligence) notice that the violative condition was hazardous." *Sec'y v. Capform, Inc.*, 16 O.S.H. Cas. (BNA) 2040, 2041 (1994).  The ALJ found there was no evidence that

---

[17]  Fabi again relies on an unreviewed ALJ decision to assail DeZalia's credibility. *See Sec'y v. Tampa Bay Plumbing & Mech., Inc.*, 13 O.S.H. Cas. (BNA) 1045, 1047 (1987).

Fabi "took any action to restrict Fabi employees from using the stairs" and that "with the exercise of reasonable diligence Fabi could have known of the presence of the violative condition," which was "in plain view." ALJ Dec. at 28. Accordingly, the ALJ reasonably rejected Fabi's proffered defense.

## H. Citation 3, Items 1a and 1b

Finally, Fabi challenges the citation (with no penalty) for other than serious violations of 29 C.F.R. § 1926.502(i)(3)-(4) which provides:

> (I) Covers. Covers for holes in floors, roofs, and other walking/working surfaces shall meet the following requirements:
>
> . . . .
>
> (3) All covers shall be secured when installed so as to prevent accidental displacement by the wind, equipment, or employees.
>
> (4) All covers shall be color coded or they shall be marked with the word "HOLE" or "COVER" to provide warning of the hazard.

The ALJ based the findings of violation on the testimony of Compliance Officer Kenneth Steinburg, who inspected the site on July 6, 1995 in response to a complaint. Steinburg testified he saw an unmarked, unsecured 3x3 plywood board covering a hole near the 41st floor elevator. Steinburg's testimony provides substantial evidentiary support for the ALJ's findings that the elevator was used by Fabi employees and that Fabi employees therefore "were exposed to the cited condition." ALJ Dec. at 29.[18]

---

[18] Fabi challenges Steinburg's credibility based on the unreviewed ALJ decision in *Sec'y v. Wachsherger Roofing*, 12 O.S.H. Cas. (BNA) 1101 (1984), which has no precedential value. *See supra* note 7.

\* \* \*

For the foregoing reasons, the petition for review is denied.

*So ordered.*